UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARY JOYCE SMITH,                )
                                 )
    Plaintiff,                   )
                                 )
v.                               )   Case Number 1:07-CV-01356
                                 )
SHEILA C. BAIR,                  )
Chairman, Federal Deposit        )
Insurance Corporation,           )
                                 )
    Defendant.                   )
_____)

## DEFENDANT'S MOTION TO DISMISS COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Sheila C. Bair, in her official capacity as Chairman of the Federal Deposit Insurance Corporation ("FDIC"), hereby moves to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. This motion is based on the following grounds:

1. Plaintiff's Complaint ("Compl.") alleges that, during a formal reduction in force conducted in the Division of Resolutions and Receiverships at the FDIC in 2005, her position was abolished, that she was notified on June 30, 2005 that she did not have an assignment right to another position, and that she was separated from the federal service with retirement benefits on September 3, 2005. (Compl. ¶¶ 6-8.)

2. Plaintiff's Complaint further alleges that the decision of the FDIC to abolish her position as part of the RIF and the determination of the FDIC that she had no assignment right to another position during the RIF were a direct consequence of her

race, color, sex, and age, in violation of Title VII of the Civil Rights Act of 1991 (Title VII) and the Age Discrimination in Employment Act (ADEA). (Compl. ¶ 9.)

3. Plaintiff's Complaint also alleges that this Court has jurisdiction of this case on the ground that she filed her Complaint within 90 days of her receipt on May 2, 2007 of a Final Agency Decision (FAD) on her administrative EEO complaint. (Compl. ¶ 2.) Plaintiff's Complaint in this case was filed on July 25, 2007.

4. As shown at note 1 on page 2 of the FAD (copy filed herewith as Exhibit 1) referenced in Paragraph 2 of Plaintiff's Complaint, Plaintiff's administrative EEO complaint (like her Complaint in this action) alleged discrimination based on race, color, sex, and age during the implementation of a reduction in force when she was not selected to one of various vacant positions and subsequently separated from the federal service.[1] The FAD, *id.* further noted that, because allegations of discrimination regarding a reduction in force are appealable to the Merit Systems Protection Board (MSPB), Plaintiff's complaint was a "mixed case complaint" within the meaning of 29 C.F.R. § 1614.302. The FAD also noted that Plaintiff had been notified that her complaint would be processed as a "mixed case complaint." *Id.*

5. Under 29 C.F.R. § 1614.310, Plaintiff was required to file a civil action on her "mixed case complaint" in an appropriate United States District Court within thirty (30) days of her receipt of the FAD. Consistent with that regulation, the FAD (at pages

---

[1] In deciding this Rule 12(b)(6) motion to dismiss, the Court may consider the FAD without converting this motion into a motion for summary judgment because the FAD is referred to in the Complaint and is central to the Plaintiff's claims. *Cephas v. MVM, Inc.*, 403 F. Supp.2d 17, 20 (D.D.C. 2005); *Savage v. Scales*, 310 F. Supp.2d 122, 129 n. 8 (D.D.C. 2004); *Lipton v. MCI Worldcom, Inc.*, 135 F. Supp.2d 182, 186 (D.D.C. 2001); *Krooth & Altman v. North American Life Assurance Co.*, 134 F. Supp.2d 96, 99 (D.D.C. 2001).

2

9-12) specifically informed Plaintiff (and her counsel of record, David H. Shapiro) of her right to appeal the FAD to the MSPB within thirty (30) days of her receipt of the FAD, or to file a civil action in United States District Court within thirty (30) days of her receipt of the FAD.[2]

6.  As noted, Plaintiff filed her Complaint in this case on July 25, 2007. Because Plaintiff filed this action more than thirty (30) days after her receipt of the FAD, her Complaint fails to state a claim upon which relief can be granted.

Respectfully submitted,

/s/ Stephen J. Kessler

September 24, 2007

Stephen J. Kessler
D.C. Bar No. 382427
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 Fairfax Drive, Room E-6014
Arlington, VA 22226
(703) 562-2311
(703) 562-2482 (Fax)

William S. Jones
Georgia Bar No. 404288
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 Fairfax Drive, Room E-6006
Arlington, VA 22226
(703) 562-2362
(703) 562-2482 (Fax)

Attorneys for Defendant

---

[2] In addition, the FAD informed Plaintiff that, if she appealed the FAD to the MSPB, she may petition the EEOC to review the FAD after the MSPB rendered a decision. (FAD 10-11.)

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARY JOYCE SMITH,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**SHEILA C. BAIR,**<br>**Chairman, Federal Deposit**<br>**Insurance Corporation,**<br><br>    **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case Number 1:07-CV-01356 |

**MEMORANDUM IN SUPPORT OF**
**<u>DEFENDANT'S MOTION TO DISMISS COMPLAINT</u>**

I.    <u>An untimely complaint is subject to a motion to dismiss under Rule 12(b)(6).</u>

Rule 12(b)(6) of the Fed. R. Civ. P. provides that a defendant may, by motion, assert the defense that the plaintiff has failed to state a claim upon which relief can be granted. The failure of a plaintiff to file timely a civil action in District Court on an administrative EEO complaint is the proper subject of a Rule 12(b)(6) motion to dismiss. *Frank v. Ridge*, 310 F. Supp.2d 4 (D.D.C. 2004), *aff'd sub nom. Frank v. Chertoff*, 171 Fed.Appx. 860 (D.C. Cir. 2005); *Carter v. Lynn*, 401 F. Supp. 1383 (D.D.C. 1975).

II.    <u>Plaintiff's administrative EEO complaint was a "mixed case complaint."</u>

29 C.F.R. § 1614.302(a) provides that a "mixed case complaint" is "a complaint of employment discrimination filed with a Federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB)." Plaintiff's administrative

4

EEO complaint in this case was a "mixed case complaint" because she alleged (as she does in her Complaint in this case) discrimination relating to her separation from the federal service as the result of a reduction in force that was appealable to the MSPB.[3]

III. **Plaintiff was required to file her Complaint in this case within 30 days of receipt of the Final Agency Decision on her administrative EEO "mixed case complaint."**

Under 29 C.F.R. § 1614.302(d)(2), upon completion of the investigation of an administrative EEO "mixed case complaint," the agency will issue a final agency decision without a hearing. *See also, Frank*, 310 F. Supp.2d 4 at 9 (employee who elects to file a mixed case complaint with agency EEO office receives final agency decision). Accordingly, the FDIC in this case issued its Final Agency Decision to Plaintiff regarding her mixed case complaint on May 1, 2007.

29 C.F.R. § 1614.310(a) provides that an individual whose administrative EEO complaint was processed as a mixed case complaint may file a civil action in an appropriate United States District Court within 30 days of receipt of a final decision issued by an agency on the complaint.[4] *Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999) (individual who elects to file administrative EEO complaint must file appeal with MSPB or civil action in federal district court within 30 days). Consistent with these regulations and case law, the Final Agency Decision (at pages 9-12) specifically informed Plaintiff (and her counsel of record, David H. Shapiro) of her rights to appeal

---

[3] (FAD 2, n. 1.) Plaintiff could have appealed her separation from the federal service as the result of the reduction in force to the MSPB under 5 C.F.R. § 351.901.

[4] In the alternative, 29 C.F.R. § 1614.302(d)(1)(ii) provides that the complainant may appeal the agency's final decision to the MSPB within 30 days of receipt of the decision. A complainant who chooses that route may appeal the discrimination claim to the EEOC or file a complaint in a federal district court after the MSPB issues its final decision. *See Butler*, 164 F.3d at 638-39.

the FAD to the MSPB within thirty (30) days of her receipt of the FAD, or to file a civil action in United States District Court within thirty (30) days of her receipt of the FAD.[5]

Plaintiff has acknowledged in her Complaint (at ¶ 2) that she received the Final Agency Decision on May 2, 2007. Accordingly, Plaintiff was required to file this civil action no later than June 1, 2007 (30 days after May 2).

## CONCLUSION

Plaintiff filed this action more than thirty (30) days after her receipt of the Final Agency Decision on her administrative EEO complaint, and the Court should dismiss the Complaint in this case for failure to state a claim upon which relief can be granted.

Respectfully submitted,

September 24, 2007

/s/ Stephen J. Kessler
_____
Stephen J. Kessler
D.C. Bar No. 382427
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 Fairfax Drive, Room E-6014
Arlington, VA 22226
(703) 562-2311
(703) 562-2482 (Fax)

William S. Jones
Georgia Bar No. 404288
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 Fairfax Drive, Room E-6006
Arlington, VA 22226
(703) 562-2362
(703) 562-2482 (Fax)

Attorneys for Defendant

---

[5] As noted, the FAD also informed Plaintiff that, if she appealed the FAD to the MSPB, she may petition the EEOC to review the FAD after the MSPB rendered a decision. *See* 29 C.F.R. § 1614.302(d)(1)(ii); *Butler*, 164 F.3d at 638-39.

**FDIC**

**Federal Deposit Insurance Corporation**
3501 Fairfax Drive, Room E-2104, Arlington, VA 22226-3500

Office of Diversity and Economic Opportunity

---

MARY JOYCE SMITH, )
    Complainant, )
                           )     Agency Docket No:  FDICEO - 050066
                           )     Date Filed:  September 6, 2005
                           )
FEDERAL DEPOSIT INSURANCE )
  CORPORATION, )
    Agency. )

## FINAL AGENCY DECISION

This is the Final Agency Decision of the Federal Deposit Insurance Corporation ("FDIC" or "Agency") finding no discrimination on the merits of the above-referenced employment discrimination complaint filed by Mary Joyce Smith ("Complainant") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16 and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a.

### I. ADMINISTRATIVE PROCEDURES

Complainant sought Equal Employment Opportunity ("EEO") counseling on August 11, 2005, regarding allegations of employment discrimination involving the Division of Resolutions and Receiverships ("DRR"), Washington, DC. Informal EEO counseling was not successful in resolving the allegations. On August 19, 2005, Complainant was issued a Notice of Right to File a Formal Discrimination Complaint, which was received on August 29, 2005. On September 6, 2005, Complainant filed a formal complaint of discrimination.

Based on a review of the formal complaint and the EEO Counselor's Report, the following claim was accepted for investigation:

> Whether Complainant was discriminated against on the bases of race (African-American), color (Black), sex (female), and age (DOB: August 30, 1955) when:
>
> 1. On June 30, 2005, she was told she would be released from her competitive level because she did not have assignment rights to another position in her competitive area, and she was separated from Federal service pursuant to a reduction-in-force effective on September 3, 2005.

A formal investigation and a subsequent supplemental investigation were conducted. On September 29, 2006, the Report of Investigation ("ROI") and the Supplemental Report of

Investigation ("SROI") were forwarded to Complainant.[1] This Final Agency Decision is being issued based on the ROI and SROI.

## II.   BACKGROUND

During the period relevant to this complaint, November 2004 through September 2005, Complainant was employed as a Resolutions and Receiverships Specialist, CG-1101-15, in the Division of Resolution and Receivership ("DRR"). Complainant had occupied this position since 2001. She was employed by the FDIC for more than 29 years and had been a grade 15 since 1991. ROI, Exhibit ("Exh.") F1 at 1.

On November 16, 2004, DRR Director Mitchell Glassman received permission to reorganize DRR, which involve in part decreasing the size of DRR's staff through a reduction-in-force (RIF), abolishing certain positions and creating new positions. ROI, Exh.G9. As part of the reorganization, all Resolutions and Receiverships Specialist positions at grades 11 through 15, including Complainant's position, were identified as surplus and abolished in September 2005. ROI, Exh. G10. On June 30, 2005, Complainant was notified that she did not have an assignment right to another position and she would be separated from service effective September 2, 2005. ROI, Exh. G8.

Complainant stated that she was qualified for multiple vacant and newly created positions during the RIF. ROI, Exh. F1 at 12, 14-15. At the CG-15 and CM-I level, Complainant claimed that she was very well qualified and should have been selected for one of the following seven (7) vacant positions:

   Special Assistant (FAMB), CG-1101-15
   Manager, Closing and Deposit Claims, CM-1101-1
   Senior Policy Advisor, CM-301-1
   Manager, Capital Markets and Resolutions CM 1101-1 (two (2) positions)
   Manager, Internal Review CM-301-1
   Manager, Risk Analyst, CM-1101-1

---

[1] Complainant alleged discrimination based on race, color, sex and age during the implementation of a reduction-in-force, when she was not selected to one of various vacant positions and subsequently separated from service. Report of Investigation, Exhibit G at 38. Because allegations of discrimination regarding a reduction-in-force are appealable to the Merit Systems Protection Board ("MSPB"), Complainant was notified that her complaint would be processed as a mixed case complaint. A mixed-case complaint is a complaint of employment discrimination filed with the Agency, related to or stemming from an action that can be appealed to the MSPB. 29 C.F.R. § 1614.302(a)(1). A complainant initially may file a mixed-case complaint with an agency or may file a mixed-case appeal directly with the MSPB, but not both. 5 C.F.R. § 1201.151. In mixed-case complaints, the Agency must issue a Final Agency Decision, without a hearing before an Administrative Judge appointed by the U.S. Equal Employment Opportunity Commission, following completion of the investigation. 29 C.F.R. § 1614.302(d). Complainant's rights to appeal this Final Agency Decision are provided at Section VI infra.

ROI, Exh. F1 at 17. At the CG-12 through CG-14 levels, Complainant claimed that she was very well qualified and should have been selected for one of the following fifteen (15) vacant positions:

> Special Assistant (FAMB), CG-1101-14
> Financial Planning Specialist, CG-301-12
> Franchise and Asset Marketing Specialist, CG-1101-12
> Claims Systems Analyst, CG-1101-13
> Capital Markets Specialist, CG-1101-13
> Claims Systems Specialist, CG-1101-13
> Contract Oversight Specialist, CG-1101-13
> Franchise and Asset Marketing Specialist, CG-1101-13
> Specialist Assistant, CG-1101-13
> Risk Analyst, CG-1101-14
> Senior Claims Analyst, CG-1101-14
> Senior Capital Marketing Specialist, CG-1101-14
> Policy Specialist (Marketing), CG-1101-14
> Senior Franchise and Asset Marketing Specialist, CG-1101-14
> Investigations Case Manager, CG-1101-14

ROI, Exh. F1 at 18. Complainant alleged that selection methods used to fill these vacant positions were "subjective and manipulative." She further claimed that management's intent was to retain younger white males and females, who had "less experience, qualifications, and tenure" than she had. ROI, Exh. F1 at 12, 14-15.

III.    LEGAL STANDARDS

Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-16, prohibits the Federal government from discriminating against employees and applicants based on race, sex, religion, national origin, and color or retaliating against them for engaging in prior protected EEO activity. The Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. § 633a, prohibits the Federal government from discriminating against employees and applicants who are age 40 and over.

The criteria set forth in the U.S. Supreme Court decision in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as supplemented by other more recent court decisions, have provided a systematic approach to be used in the analysis of employment discrimination cases involving allegations of disparate treatment. This systematic approach is generally a three-stage process involving a shifting of burdens between parties. U.S. Postal Service v. Aikens, 460 U.S. 711 (1983); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981).

The complainant has the initial burden of establishing what is termed a prima facie case. The evidence appropriate to establish a prima facie case will vary, depending on the particular facts and circumstances at issue. In general, the complainant has the burden of showing that she was

Final Agency Decision                                                                 Page 4 of 13

subjected to an adverse employment action under circumstances which, if left unexplained, give rise to an inference of unlawful discrimination.

The establishment of a prima facie case is not the equivalent of a factual finding of unlawful discrimination. Once a prima facie case has been established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. The articulated reason must be sufficient to raise a genuine issue of material fact as to whether the action taken was motivated by an unlawful discriminatory bias. Additionally, the articulated reason should be stated with sufficient clarity and specificity to provide the complainant a full and fair opportunity to meet his or her ultimate burden of proof. The burden of proof remains at all times with the complainant, who must ultimately show that prohibited discrimination played a part in the employer's decision.

Assuming the employer meets its burden, the complainant could still prevail if she demonstrates that the employer's explanation is a pretext for prohibited discrimination. A complainant demonstrates pretext by showing that the employer was more likely motivated by discrimination or, alternatively, that the articulated reason is unworthy of credence. A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false and that prohibited discrimination was the real reason. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509-11 (1993). The fact-finder, however, may infer discrimination where the evidence establishes that the employer's legitimate, non-discriminatory reason is unworthy of credence. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).

The McDonnell Douglas formula applies to age discrimination complaints as well. Loeb v. Textron, Inc., 600 F.2d 1003 (1st Cir. 1979). However, in cases involving age discrimination a complainant must show that her age was a determining factor in the agency's action rather than a factor that played a part in the decision. U.S. Equal Employment Opportunity Commission v. Borden's Inc., 724 F.2d 1390, 1393 (9th Cir. 1984). Notably, a complainant must establish that age was a determinative factor in the sense that "but for" her age, the agency would have treated her more favorably.

In the instant complaint, to establish a prima facie case of discrimination, Complainant must show: (1) she is member of a protected group; (2) she was not selected for a newly created or vacant position during the operation of a RIF; and (3) similarly situated employees outside her protected groups were selected for the positions.

IV.   ANALYSIS

   A.   Complainant Established a Prima Facie Case of Race, Color, and Sex Discrimination but Failed to Establish a Prima Facie Case of Age Discrimination.

As an African American, Black, female, Complainant is a member of three protected groups based race, color and sex; she suffered an adverse action when she was not selected for a vacant or newly created position during the RIF; and she was treated less favorably than similarly

situated employees outside her class. There were six employees, in addition to Complainant, who held surplus CG-15 Resolutions and Receiverships Specialist positions at the time of the RIF; four were Caucasian males; one was a Hispanic male; and one was a Caucasian female. Three of Caucasian males and the Hispanic male were selected for vacant or newly created positions. ROI, Exh. F1 at 2. ROI, Exh. G18. Therefore, Complainant established a prima face case of race color and sex discrimination.

Complainant, however, cannot establish a prima facie case of age discrimination. Complainant was 50 years old at the time of the RIF and therefore a member of the protected age group. But, two similarly situated employees selected for newly created and/or vacant positions, ages 55 and 53, were older than Complainant; one was age 48; and only one employee, age 40, was substantially younger the Complainant. Id. Therefore, the facts do not support an inference of age discrimination.

    B.    Management Articulated Legitimate Non-Discriminatory Reasons for Not Selecting Complainant.

DRR Division Director Mitchell Glassman explained that a RIF had to be conducted because:

> DRR still had too many employees for a decreasing workload. Over the past several years [they] were also faced with a decreasing budget allocation, which required [them] to downsize our workforce going forward. Further, DRR needed to reorganize its operations in light of changes in the way it handled resolutions and receiverships of failed banks.

Exh. F7 at 1. Mr. Glassman stated that Complainant's position was one of many positions declared surplus. At the conclusion of the RIF, there was a 53% reduction of staff. He and his Deputy Directors worked together to determine which positions were needed after the reorganization and concluded that the duties of Complainant's position were no longer required. Thus, all positions in Complainant's competitive level were abolished. As a result, Complainant and others who held the same position were released from competitive level during Round 1 of the RIF. Id.

Other management officials supported Mr. Glassman's explanation for the RIF. Pamela Mergen, Lead Human Resources Specialist, DOA, noted that DRR had changed the manner in which resolutions and receiverships work was performed, and this change resulted in a reorganization of operations and a surplus of employees. ROI, Exh. F2 at 1-2. DRR Assistant Director Herbert Held stated that "DRR reorganized and implemented a new business model and there was a decreased workload." ROI, Exh. F3 at 1. DRR Administration Manager James Seegers indicated that the "RIF was conducted due to reorganization and to lack of work." ROI, Exh. F4 at 1. DRR Deputy Directors Gail Patelunas and James Wigand stated that the lack of work and a new business model were the reasons for the RIF. ROI, Exh. F5 at 1; F6 at 1.

Ms. Mergen noted that she drafted and facilitated DRR's restructuring plan and provided technical advice and assistance throughout the RIF. She further explained that all employees

who were released in Round 1, including Complainant, were arranged by grade level and an analysis of the employee's qualifications was conducted for each vacancy at that grade level. Referral rosters were developed based on the employee's tenure, subgroup and retreat rights, if any, and sent to the selecting officials for placement decisions. After selection and placement decisions were made, the Human Resources Branch of DOA reviewed the selections "to ensure they were in accordance with the RIF regulations." ROI, Exh. F2 at 1-3.

Ms. Patelunas also recalled that "Human Resources staff [were] present" as they went through the roster of eligible applicants "to ensure [their] actions were proper." ROI, Exh. F5 at 2. Mr. Glassman agreed that "staff from the Human Resources Branch were in the room . . . to ensure that [they] followed proper RIF procedures." ROI, Exh. F7 at 2. He explained that after making selections from the rosters, they went back and re-examined the list against the employees who were not selected to ensure they did not inadvertently overlook a more qualified applicant. Id.

In response to Complainant's claim that the position descriptions were intentionally developed to provide an advantage to certain individuals, Mr. Glassman stated that Complainant was not correct. In response to a workload that was substantially reduced, unpredictable and irregular, a new business model was developed to avoid another RIF in the future by "leverage[ing] the use of non-DRR FDIC staff, particularly examiners, for fulfilling the Corporation's resolutions and receiverships mission." Because that staffing resource (non-DRR FDIC staff) would only be performing resolutions and receiverships work on an ad hoc basis from their normal jobs, Mr. Glassman explained that DRR would need to be staffed with specialists who could train, direct, and serve as subject matter experts for the non-DRR FDIC staff when they were called into service. Therefore, many existing positions were abolished and new positions were created to meet the needs of the new business model. ROI, Exh. F7 at 1-3.

The selection decisions for the positions at issue were made by Mr. Glassman, Ms. Patelunas, and Mr. Wigand. They provided the following explanations for their selection decisions:

- Manager, Internal Review, CM-1: - the selectee was a veteran.
- Manager, Closing and Deposit Claims, CM-1101-1: the selectee had directly related recent experience while Complainant's experience was minimal and dated back to 1991.
- Senior Claims Systems Analyst, CG-1101-14 and 13: the selectees had ten (10) years of recent, directly related and continuous experience, while Complainant had no recent experience.
- Manager, Capital Markets and Resolutions, CM-1101-1 (two positions): one selectee was a veteran and the other had ten (10) years of recent, directly related and continuous experience; Complainant had less than four (4) years experience.
- Senior Franchise and Asset Marketing Specialist, CG-1101-14 and 13: the selectees had had ten (10) years of recent, directly related and continuous experience; Complainant had approximately four (4) years of experience.
- Capital Markets Specialist, CG-1101-13 (two positions): one selectee had approximately eight (8) years of recent, directly related, and continuous experience, which included serving as a subject matter expert, developing and teaching a securities marketing course, serving as the systems administrator for the securities

management database, and performing as team leader for the disposition of type 25 assets. The other selectee had over nine (9) years of recent, directly related, and continuous experience in the area of capital markets. Complainant had less than four (4) years experience.

- Senior Capital Markets Specialist, CG-1101-14 (three positions): one selectee had fourteen (14) years of recent, directly related, and continuous experience in capital markets; the second selectee was an attorney who had worked in the capital markets area and had experience managing and selling capital markets instruments; the third selectee had eight (8) years of recent, directly related, and continuous experience, including products such as mortgage and asset backed securities, junk bonds, common stock, and CMO's. Complainant had less than four (4) years of experience and her cited depth of experience and assignments did not compare with the selectees.

- Franchise and Asset Marketing Specialist, CG-1101-12: the selectee had over fifteen (15) years of recent, directly related, and continuous experience in the area of resolutions; Complainant had less than four (4) years of experience.

- Senior Policy Advisor, CM-301-I: the selectee had approximately nine (9) years of recent, directly related experience in policy analysis and had served for approximately five (5) years as policy advisor to the FDIC Chairman and Board of Directors. Complainant had no comparable background and experience;

- Policy Specialist (Marketing), CG-1101-14: the selectee had approximately fifteen (15) years of recent, directly related and continuous experience, including ten (10) years as an attorney providing guidance and advice on the financial review and analysis of the evaluation, management and disposition of securities and capital market assets of failed banks. Complainant had approximately four (4) years of experience.

- Special Assistant (FAMB), CG-1101-14: the selectee had over ten (10) years of recent, directly related and continuous experience in the area of Franchise and Asset Marketing, including complex and very difficult bank failures. Complainant had no comparable background and experience and less than seven (7) years of experience in the area of Franchise and Asset Marketing.

- Special Assistant (to the Deputy Director), CG-1101-13: the selectee had a broad background, knowledge of and skill in DRR's business, including serving as contributing editor and writer for "Managing the Crisis," a publication that documented FDIC's role in resolving the banking crisis; coordination of DRR's international relations activities; service as a liaison for foreign visitors; travel to several foreign countries as FDIC's representative; and knowledge and skill in the functions of Receivership Operations. Complainant had no comparable experience in the international arena and no comparable writing experience.

- Investigation Case Manager, CG-1101-14: the selectee had approximately twenty (20) years of directly related and continuous experience in the area of investigations, including being the primary expert for criminal investigations in DRR. Complainant had no investigations experience.

- <u>Risk Analyst, CG-1101-14 (3 positions)</u>: the three selectees had directly related financial analysis experience involving risk analysis, while Complainant had no directly related risk analysis experience.
- <u>Contract Oversight Specialist, CG-1101-1</u>: the selectee had two (2) years of recent, directly related, continuous experience in contracting while Complainant had no contracting experience.
- <u>Manager, Risk Analysis, CM-1101-I</u>: the selectee had approximately twenty-five (25) years of experience in financial analysis related work. While Complainant had some experience in financial analysis, she did not have the same depth of experience as the selectee.
- <u>Financial Planning Specialist, CG-301-12</u>: the selectee had directly experience involving receivership billing and cost management activities; Complainant had no experience in this area.

Supplemental Report of Investigative (SROI), Exhs. A1, A2, and A3.

A detailed review of the resumes and application documents for each selectee, along with the positions descriptions of the above discussed positions and the written justifications for the selection decisions, supported the explanations provided by Mr. Glassman, Ms. Patelunas, and Mr. Wigand as well as the written justifications for their selection decisions. ROI, Exh. G 11; SROI, Exhs B1; B2.

    C.    <u>Complainant Failed to Demonstrate Pretext.</u>

Complainant stated that she had more experience and tenure than the surplus employees who were chosen to fill a vacant or newly created position, and all the selectees were "white, males or females." ROI, Exh. F1 at 24. She claimed that "management's actions were in "direct and blatant violation of Section I-5 and II-5, regarding Use of Vacancies and Retention Registers, of FDIC Circular 2100.4 . . . thereby discriminately excluding [her], the sole African American Black Female at [her] professional level, . . . while selectively and strategically placing all white males and females, and shielding them from any impact of the RIF." [2] <u>Id</u>. at 3. Complainant asserted that her position as a Resolutions and Receivership Specialist, CG-1101-15 was incorrectly determined to be surplus, and the "newly created and vacant positions" were "merely an effort to retain some individuals and exclude others." According to Complainant, there was "a committed effort of 'word smithing' [the new position descriptions] . . . to correspond with duties already being performed by many of the younger white males and females." <u>Id</u>. at 14. In this manner, "management was able to target these employees for retention while by-passing the usual criteria of tenure/length of service and/or experience, which "would have placed [Complainant] ahead of everyone else, except veterans." <u>Id</u>. at 24.

---

[2] FDIC Circular 2100.4, Section I-5, Use of Vacancies, describes generally how vacant positions within a competitive area may be filled during a RIF. Section II-5, Retention Registers, sets out the guidelines for establishing and utilizing a retention register during a RIF. ROI, Exh. G13 at 311-312, 316.

Aside from Complainant's self-serving assertions, however, she presented no evidence to support her claims. Therefore, Complainant failed to show that any of management's explanations for not selecting Complainant for the identified vacant and newly created positions were pretext for discrimination.

## V.    CONCLUSION

It is the Final Decision of the Agency that Complainant was not discriminated against based on race, color, sex or age which she was not selected for a vacant or newly created position during the 2005 RIF in DRR.

If Complainant is dissatisfied with the Final Agency Decision in this complaint, pursuant to the EEOC regulations at 29 C.F.R. §§ 1614.302(d) (Mixed Case Complaints), Complainant may file an appeal with the MSPB or file a civil action in a U.S. District Court. In the event an appeal is filed with MSPB, Complainant must include the correct Agency Docket Number, FDICEO - 050066, in all correspondence involving the appeal to avoid any undue delay in processing the appeal.

## VI.    RIGHT TO APPEAL TO THE MERIT SYSTEMS PROTECTION BOARD ("MSPB")

An appeal may be filed with the MSPB at any time up to thirty (30) calendar days of Complainant's receipt of this decision. If Complainant is represented by an attorney of record, the thirty (30) day period for filing an appeal begins to run from the date the attorney receives this decision.[3]

The appeal may be sent by mail or delivered in person, or by facsimile. The appeal may be sent by mail, or delivered in person to:

> P J WINZER
> REGIONAL DIRECTOR AND CHIEF ADMINISTRATIVE JUDGE
> MERIT SYSTEMS PROTECTION BOARD
> WASHINGTON, DC REGIONAL OFFICE
> 1800 DIAGONAL ROAD
> SUITE 205
> ALEXANDRIA, VA 22314-2840

If mailed, the appeal must be postmarked no later than the end of the thirty (30) day filing period.

The appeal may be forwarded by facsimile to (703) 756-7112. If hand-delivered or sent by facsimile, the appeal must be received by the MSPB no later than the end of the thirty (30) day filing period.

---

[3] At the time the appeal is filed, Complainant must also include a request for a hearing. If Complainant does not submit such a request, the right to a hearing is deemed waived. See 5 C.F.R. § 1201.24.

Complainant may use the enclosed MSPB Appeal Form 283 and should indicate what aspect of this Final Agency Decision is being appealed. Complainant must furnish **two copies of the appeal with supporting documents** to the MSPB. If an appeal is not filed within the above time limits, the appeal will be untimely and may be dismissed by the MSPB.

At the same time, Complainant files the appeal with the MSPB, a copy of the appeal and supporting documents must also be sent to the FDIC. **Service on the FDIC by mail or hand-delivery must be made on both of the following designated FDIC officials:**

> FEDERAL DEPOSIT INSURANCE CORPORATION
> OFFICE OF DIVERSITY AND ECONOMIC OPPORTUNITY
> ATTN: D. MICHAEL COLLINS, DIRECTOR
> 3501 FAIRFAX DRIVE (ROOM E-2104)
> ARLINGTON, VA 22226-3500

> and

> FEDERAL DEPOSIT INSURANCE CORPORATION
> LABOR, EMPLOYMENT & ADMINISTRATION SECTION, LEGAL DIVISION
> ATTN: JAMES R. LAWRENCE, ASSISTANT GENERAL COUNSEL
> 3501 FAIRFAX DRIVE (ROOM D-6134)
> ARLINGTON, VA 22226-3500

Due to delays experienced by the Agency with receiving mail sent through the U.S. Postal Service, in addition to mailing a copy of the appeal, brief, or statement, a copy may also be sent by facsimile transmission to D. Michael Collins at (703) 562-6088 and to James R. Lawrence at (703) 562-2468.

VII.  RIGHT TO FILE A PETITION TO THE EEOC  (29 C.F.R. §§ 1614.303; 1614.305 and 1614.306)

If Complainant is dissatisfied with the MSPB's final decision on appeal, Complainant may petition the EEOC to consider that decision. The EEOC will not accept appeals from an MSPB dismissal without prejudice. The petition for review must be filed with the EEOC within thirty (30) days of receipt of the MSPB decision or within thirty (30) days of when the decision of a MSPB field office becomes final. Complainant must file the EEOC petition by certified mail, return receipt requested to:

> OFFICE OF FEDERAL OPERATIONS
> U. S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
> P. O. BOX 19848
> WASHINGTON, DC 20036

The petition for review must be served upon all individuals and parties on the MSPB's service list by certified mail on or before the filing with the EEOC, and:

> THE CLERK OF THE MSPB
> 1120 VERMONT AVENUE, NW
> WASHINGTON, DC 20419

The petitioner must certify as to the date and method of service.

Once the EEOC receives petition, it will review the petition within thirty (30) days of receipt to determine whether it will consider the MSPB decision. If the EEOC decides to consider the MSPB's decision, it must issue a decision within sixty (60) days. The EEOC can either concur with the decision of the MSPB or issue a decision that is contrary to that of the MSPB.

If the EEOC issues a decision that is contrary to that of the MSPB, the matter will be referred to the MSPB. If the MSPB thereafter reaffirms its previous decision, the matter will be immediately certified to a Special Panel consisting of members of both the EEOC and the MSPB who shall in turn order the Agency to take any action appropriate to carry out the decision of the Panel.

## VIII. RIGHT TO FILE A CIVIL ACTION (29 C.F.R § 1614.310)

In addition to Complainant's rights to file an appeal with the MSPB and to petition the EEOC, Complainant has the right to file a civil action in U.S. District Court in the following circumstances:

- If Complainant elects not to appeal to the MSPB, a civil action may be filed in an appropriate U.S. District Court within thirty (30) calendar days from the date Complainant receives this decision; or

- If Complainant files an appeal with the MSPB, Complainant still has the right to file a civil action within thirty (30) days after receiving the MSPB's final decision, if no petition for reconsideration of MSPB's decision is filed with the EEOC; or

- If the MSPB has not issued a final decision on Complainant's appeal within one hundred twenty (120) days, Complainant may elect to terminate the MSPB's processing of the appeal and file a civil action; or

- If Complainant files a petition with the EEOC on the MSPB's decision and the EEOC notifies Complainant that it will not consider the decision of the MSPB, or that it concurs with the decision of the MSPB, Complainant may file a civil action within thirty (30) days of receipt of such notice; or

- If Complainant files a petition with the EEOC on the MSPB's decision and the EEOC issues a decision that differs from that of the MSPB, and the MSPB notifies Complainant that it concurs and adopts the decision of the EEOC, Complainant may file a civil action within thirty (30) days of such notice; or

- If Complainant files a petition with the EEOC but the MSPB does not concur with the decision of the EEOC, and instead reaffirms its initial decision, Complainant may file a civil action within thirty (30) days of receipt of such notice from the MSPB; or

- If Complainant files a petition with the EEOC and there is no decision by the EEOC, no reconsideration decision by the MSPB, or no decision by the Special Panel within one hundred eighty (180) days, Complainant may file a civil action at any time thereafter.

If Complainant files a civil action, and does not have, or is not able to obtain the services of an attorney, Complainant may request the court to appoint an attorney as a representative in the matter and to permit Complainant to file the action without payment of fees, costs, or other security. **The decision to grant or deny the request is within the sole discretion of the court.** Filing a request for an attorney does not extend Complainant's time in which to file a civil action. Both the request and the civil action **must be filed within the time period specified above.**

Complainant is further notified that if a civil action is filed, **Sheila C. Bair, Chairman, Federal Deposit Insurance Corporation,** must be named as the defendant and failure to do so may result in the dismissal of the action filed.


*Vincent R. Johnson*
for D. Michael Collins
Director

1 May 2007
Date

Enclosure:   MSPB Appeal Form 283


David H. Shapiro, Esquire (Complainant's representative)
Swick & Shapiro, P.C.
1225 Eye Street, N.W., Suite 1290
Washington, DC 20005
        VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
        # 7000 1670 0000 0946 8930

Final Agency Decision	Page 13 of 13

Mary Joyce Smith (Complainant)
1402 Baytree Terrace
Mitchellville, MD 20721
    VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
    # 7001 1940 0001 2037 7796

Edith Murphy, EEO Specialist, Complaints Processing Branch, ODEO
Stephanie Gordon, EEO Specialist, Complaints Processing Branch, ODEO
Tawanna Greene, EEO Assistant, Complaints Processing Branch, ODEO

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARY JOYCE SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number 1:07-CV-01356 |
| | ) |
| SHEILA C. BAIR, | ) |
| Chairman, Federal Deposit | ) |
| Insurance Corporation, | ) |
| | ) |
| Defendant. | ) |

## ORDER

UPON CONSIDERATION of Defendant's Motion to Dismiss Complaint, the opposition thereto, and the entire record herein, it is this ____ day of _____, 2007:

ORDERED that Defendant's Motion is hereby Granted, and it is further

ORDERED that Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

SO ORDERED.

RICHARD W. ROBERTS
UNITED STATES DISTRICT JUDGE